IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| | § | CAUSE NO. 4:24-CR-224 |
| VS. | § | (The Hon. Lee H. Rosenthal) |
| | § | |
| ENRIQUE ROBERTO CUELLAR | § | |
| IMELDA CUELLAR | § | |

### REPLY IN SUPPORT OF DEFENDANTS' MOTION TO HOLD TRIAL IN LAREDO, TEXAS

TO THE HON. LEE H. ROSENTHAL,
UNITED STATES DISTRICT JUDGE:

NOW COMES ENRIQUE ROBERTO "HENRY" CUELLAR and IMELDA RIOS CUELLAR, Defendants herein, through counsel. The Cuellars submit this reply in support of the Defendants' motion to hold trial in Laredo, Texas. Dkt. No. 72.

### I.   BACKGROUND

The Cuellars filed their motion to hold trial in Laredo, Texas on April 16, 2025. Dkt. No. 72. The government filed its response on April 25, 2025. Dkt. No. 74. The government argues Houston is a proper location for the trial because it is within the Southern District, that the defense attorney burdens would be greater than the client burdens, the evidence can be viewed from anywhere, some of the

government's witnesses would be inconvenienced by holding the trial in Laredo and it would be difficult to seat an unbiased jury in Laredo. *See* Dkt. No. 74.

## II.  ARGUMENT

The Cuellars do not argue that the trial must be held in Laredo, Texas, or that no facts occurred in Houston. Instead, the Cuellars argue only that the trial *should* be held in Laredo in the interests of convenience and the effective administration of justice.

The government does not submit evidence to rebut the burden established by the Cuellars. *See* Dkt. No. 74. Congressman Cuellar submitted a declaration, signed in Laredo, which established the burden a trial in Houston would place on him and the performance of his public duties . Dkt. No. 72-1. The government argues, but does not establish with any competent evidence, that witnesses may have an equivalent or greater burden. *See* Dkt. No. 74. It argues Houston could be a more favorable location for its witnesses located outside of Texas, but it does not establish that catching a connecting flight to Laredo is inconvenient for any one person much less that it is unduly burdensome to outweigh the defendants' interest. *See* Dkt. No 74.

Several of the cases the government cites in its motion do not support their own position. Dkt. No. 74.

The government cites *Garza* for the proposition that defendant attorney travel costs should be considered in the transfer analysis and that the trial court should consider the location of the defendant's attorney's practice. Dkt. No. 74 at 4. That is incorrect. *Garza* involved the impermissible relocation of a trial over the objection of defendants' appointed counsel who could not travel more than 300 miles to the new location of the trial. *United States v. Garza*, 593 F.3d 385, 388 (5th Cir. 2010). Despite what the government suggests, *Garza* does not stand for the proposition that the government may invoke the location of a defense attorney's practice to prevent the transfer of a trial within a venue. *See id. Garza* stands for the proposition that when defense counsel objects to the location of the trial because of the burden, the trial court could consider the location of the defense attorney's practice. *Id.* Here, Defense counsel has not objected to the relocation of the trial and defense counsel would much rather suffer a long drive than have Congressman Cuellar be burdened by holding the trial away from his home and public office.

The government also cites from *United States v. Menendez*, No. 1:23- cr-490, (S.D.N.Y. Jan. 15, 2024), in support of its position, calling Docket Number 137 the New Jersey Senator's "motion to transfer venue to the District of New Jersey." Dkt. No. 74 at 7. It then cites Docket Number 308 as the order denying the motion to transfer. *Id.* The government does not include copies of these docket entries or Westlaw searchable citations. The defendants attach copies of these filings to this

3

reply. It turns out Docket Number 137 is a 49-page motion to dismiss based on lack of venue and duplicity and a motion to sever. Exhibit A. The actual motion to transfer consists of four paragraphs of the 49-page motion that is effectively boilerplate and argued in the alternative to dismissal based on improper venue. Exhibit A at 25-26. Docket Entry 308 is the court's written order denying the omnibus motion. Exhibit B. But Docket Entry 344 is the transcript of the court hearing where the district judge made his decision and extensively discussed the substantive reasons for that decision. Exhibit C. In that hearing, the judge explained that the Southern District of New York was a mere 20 miles from the Menendez residence and 10 miles from two other defendants' residence. Exhibit C at 26. It held that no evidence or even arguments had been submitted regarding inconvenience. Exhibit C at 27. Simply, the court held that crossing the Hudson River did not warrant a transfer. Exhibit C at 27. Finally, the trial judge held that having a New Jersey congressman tried by his constituents was a factor about "democratic interests" that weighed *in favor* of transfer to New Jersey, but that factor did not overcome the other nine factors on its own. Exhibit C at 30-31.

In sum, the Menendez ruling supports the Cuellars' motion for transfer because it holds that democratic interests favor a politician's trial being held within his district and it is a non-sequitur concerning nearly all other factors which bear no resemblance to the 300-mile burden being placed on the Cuellars.

4

The government also argues that Mr. Cuellar is too well known in Laredo to hold his trial there. Dkt. No. 74 at 9. Henry Cuellar has been an elected public servant in the state of Texas for 38 years and three months. After serving in the Texas House of Representatives he was Texas' Secretary of State before being elected to his current position as a United States Congressman for the 28th House District in 2005. He is one of the senior members of the United States House of Representatives. It is fair to say that Mr. Cuellar is a well-known politician in Texas. Local Houston news outlets have covered the Cellars' case closely.[1] People in Houston read the news just like the ones in Laredo and many jurors anywhere in the state will be familiar with Mr. Cuellar and the news coverage. The argument that it may be slightly harder to seat a jury in Laredo instead of Houston does not

---

[1] Gabrielle Banks, Texas Rep. Henry Cuellar's Ties to Azerbaijan Scrutinized, Hous. Chron., Feb. 14, 2022, https://www.houstonchronicle.com/politics/texas/article/Texas-Rep-Henry-Cuellar-s-ties-to-nation-of-16795197.php.

Taylor Goldenstein, Henry Cuellar Faces Tough South Texas Election Amid Legal Challenges, Hous. Chron., Nov. 4, 2024, https://www.houstonchronicle.com/politics/article/henry-cuellar-south-texas-election-19841278.php.

Pablo De La Rosa, *Houston Woman Pleads Guilty in Henry Cuellar Bribery Investigation*, Hous. Pub. Media, May 14, 2024, https://www.houstonpublicmedia.org/articles/court/2024/05/14/487393/houston-woman-pleads-guilty-in-henry-cuellar-bribery-investigation/.

Benjamin Wittes, U.S. Rep. Henry Cuellar's Bribery Trial Scheduled for March 2025, Hous. Chron., May 16, 2024, https://www.houstonchronicle.com/politics/texas/article/henry-cuellar-trial-date-scheduled-march-19462657.php.

significantly impact the transfer analysis or outweigh the relevant democratic interests. *See* Exhibit C at 31. The government's citation to *United States v. Ackal* is unavailing. *Ackal* concerned a trial for constitutional violations by employees at a jail that had been intensely covered by local news. The trial court determined that Shreveport was a better location for the trial because "there has been no notable trial-related publicity surrounding the Shreveport area." *United States v. Ackal*, No. CR 16-00048-ALL, 2016 WL 4922854, at *6 (W.D. La. Sept. 14, 2016). There has been plenty of notable trial related publicity in the Houston area. The Cuellars' case is a national news story and there has been trial-related publicity all over the nation, particularly in Houston.

The government argues that the 300,000-person population in the Laredo Division is too small to select an unbiased jury and the Houston division's 7.1M population would be preferrable. Dkt. No. 74 at 11-12. It couples that argument with the claim that Mr. Cuellar is known as the "King of Laredo" and that his family is a "political dynasty." Dkt. No. 74 at 9. This characterization is untrue and unsubstantiated by anything other than sensational stories. Cherry-picking descriptions of Congressman Cuellar avoids the hard work of demonstrating actual burden in the transfer analysis.

Behind the government's argument is the suggestion that the people of Laredo cannot be trusted with the trial of their own congressman and that it is not worth the

trouble of holding high-profile trials in smaller communities. Both conclusions should be flatly rejected by the Court. The suggestion that the people of Laredo cannot fairly preside over their own elected congressman because he is Laredo royalty is offensive and the type of argument that is not employed in trials of 'big-city' politicians. Concluding that a population of 300,000 is too small to seat a jury of 14 is also ludicrous and risks the appearance of prejudice towards any community that is not a bustling metropolis. These conclusions are also undercut by the government's own case which concludes that there is a relevant "democratic interest" in favor of having an elected person's own constituents preside over that person's trial. Exhibit C at 30-31; *United States v. Menendez*, No. 1:23- cr-490, (S.D.N.Y. Jan. 15, 2024). Judicial Divisions within the Southern District of Texas--including Laredo--have routinely conducted high-profile trials of public officials elected from within those Divisions, including elected judges, district attorneys, city council members, and sheriffs. The Laredo Division should hold this trial as well.

## CONCLUSION

For these reasons and the ones stated in the original motion, Dkt. No. 72, the Cuellars ask the Court to grant their request to hold trial in Laredo, Texas.

Respectfully submitted,

FLOOD & FLOOD

*/s/ Chris Flood*
Chris Flood
Email: chris@floodandflood.com
State Bar No. 07155700
Federal I.D. No. 9929

Charles Flood
Email: charles@floodandflood.com
State Bar No. 00798178
Federal I.D. No. 22508

Stephen D. Dockery
State Bar No. 24120265
Email: stephen@floodandflood.com
914 Preston, Ste. 800
Houston, Texas 77002
713-223-8877
713-223-8877 fax

THE REED LAW FIRM, PLLC
Eric Reed
State Bar No. 00789574
Federal I.D. No. 17904
Email: ereed@reedlawpllc.com
912 Prairie St., Suite 100
Houston, Texas 77002
713-600-1800
713-600-1840 fax

***ATTORNEYS FOR ENRIQUE ROBERTO "HENRY" CUELLAR***

DRUMHELLER, HOLLINGSWORTH & MONTHY, LLP

*/s/ Derek S. Hollingsworth*
Derek S. Hollingsworth
State Bar No. 24002305
Federal I.D. No. 34569
Email: dhollingsworth@dhmlaw.com
*ATTORNEY-IN-CHARGE*

Anthony D. Drumheller
State Bar No. 00793642
Federal I.D. No. 22734
Email: adrumheller@dhmlaw.com

Jeremy T. Monthy
State Bar No. 24073240
Federal I.D. No. 1115582
Email: jmonthy@dhmlaw.com

Lindsay M. Contreras
State Bar No. 24094164
Federal I.D. No. 3685193
Email: lcontreras@dhmlaw.com
712 Main Street, Suite 1705
Houston, Texas 77002
Telephone: (713) 751-2300
Facsimile: (713) 751-2310

***ATTORNEYS FOR IMELDA RIOS CUELLAR***

9

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Chris Flood*
Chris Flood