IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| V. § | Case No. 4:24-cr-00224 |
| § | |
| ENRIQUE ROBERTO "HENRY" § | |
| CUELLAR and IMELDA RIOS § | |
| CUELLAR § | |

**ENRIQUE "HENRY" CUELLAR'S RENEWED MOTION FOR CIPA DISCOVERY**

TO THE HONORABLE LEE H. ROSENTHAL,
UNITED STATES DISTRICT JUDGE:

NOW COMES UNITED STATES CONGRESSMAN ENRIQUE ROBERTO "HENRY" CUELLAR, Defendant herein, through counsel. Mr. Cuellar moves the Court to order the Government to search for and disclose all Classified exculpatory and impeachment material, including but not limited to the specific categories of information listed below.

## I. BACKGROUND

On May 8, 2024, the Government moved to designate a Classified Information Security Officer and to hold a CIPA Pretrial Conference. Dkt. Nos. 31, 32. On May 29, 2024, the Government moved to set CIPA filing deadlines. Dkt. No. 45. After the Government opposed allowing defense counsel to initiate the security clearance application process, defense counsel moved for an order compelling the application

1

on July 16, 2024. Dkt. No. 48. On July 31, 2024, the Court issued an order compelling the government to allow counsel to initiate the clearance application process. Dkt. No. 55. The Government filed an *ex parte, in camera* motion for protective order under CIPA on September 30, 2024. Dkt. No. 60. The Court granted the motion and authorized the *ex parte* withholding of classified information and authorized an undisclosed substitution of unclassified evidence. Dkt. No. 65. The Cuellars raised the issue of the Government's failure to search for classified discovery and *Brady* material on May 1, 2025. Dkt. No. 76. Congressman Cuellar filed an additional Motion for Discovery on June 9, 2025. Dkt. No. 100.

On April 21, 2025, the government notified Defense counsel that their security clearance was approved, and on June 11, 2025, the government's Classified Information Security Officer (CISO) provided counsel with access to the required secured space in the federal courthouse (SCIF) for their discussion of classified information.

## II. LEGAL STANDARD

The Classified Information Procedures Act ("CIPA") is simply a procedural rule for the handling of classified information. It does not excuse the government from failing to search for and produce exculpatory information, impeachment material or the prior statements of its witnesses, nor does it excuse the government from its notice requirements under the Foreign Intelligence Surveillance Act and the

FISA Amendments Act of 2008. Justice Manual § 2054; *see also United States v. Aref*, 533 F.3d 72, 78 (2d Cir. 2008). CIPA was designed to protect and restrict the discovery of classified information in a way that does not impair the defendant's right to a fair trial." *Aref*, 533 F. 3d at 78.

The classification level of information in the possession of the United States is *wholly irrelevant* as to whether or not it is discoverable. Classification rules appropriately exist to safeguard the national defense of the United States by limiting the dissemination of such information in the normal course. *See* Exec. Order No. 13526, 75 Fed. Reg. 707 (2009) (prescribing a uniformed system for classifying national security information). But once a defendant is indicted, the government is obligated to consider whether information within its holdings is discoverable under the applicable rules, statutes and constitutional case law. *See United States v. Sedaghaty*, 728 F.3d 885, 892 (9th Cir. 2013) (finding CIPA based *Brady* violation in withholding classified impeachment evidence from the defense).

When the charges and government's discovery create a basis to believe that the intelligence community (IC) was involved in an investigation of the case the Government has a duty to search the intelligence files for discoverable material.

> When an IC component has actively participated in a criminal investigation or prosecution -- that is, has served in a capacity that exceeds the role of providing mere tips or leads based on information generated independently of the criminal case -- it likely has aligned itself with the prosecution and its files are subject to the same search as

>would those of an investigative law enforcement agency assigned to the case.

U.S. Dep't of Just., Just. Manual § 2052(B)(1) (2020).

Here, the Federal Bureau of Investigation is the lead investigative agency in this case, and the FBI is one of the 18 agencies in the United States which comprise the IC. Even when the intelligence community was not actively involved in an investigation the Government should "extend to sources that are readily available to the government and that, because of the known facts and nature of the case, should be searched as a function of fairness to the defendant." Id. § 2052(B)(2).

The government must conduct a search if the defendant has made an explicit request for files and there is a non-trivial prospect that the examination of those files might yield material exculpatory information. *See United States v. Brooks*, 966 F.2d 1500, 1504 (D.C. Cir 1992). Even absent a specific request from the defense, a prosecutor is required to search if there exists any reliable indication suggesting that IC files contain evidence that meets the *Brady* standard of materiality. *See* Just. Manual § 2052(B)(1); *see also Kyles v. Whitley*, 514 U.S. 419, 433 (1995) ("[R]egardless of request, favorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.") (internal quotations omitted). Moreover, courts have adopted a lesser standard than *Brady* in cases involving classified information,

requiring disclosure of information that is "helpful or material to the defense." *Aref*, 533 F.3d at 80 ("Information can be helpful without being favorable in the *Brady* sense."); Sedaghaty, 728 F.3d at 904 ("If the information meets the 'relevant and helpful' test, CIPA § 4 empowers the court to determine the terms of discovery, if any.") CIPA "neither adds to nor detracts from the substantive rights of the defendant or the discovery obligations of the government." U.S. Dep't of Just., Just. Manual § 2054.

Because Courts cannot be expected to anticipate every defense contemplated by defense counsel – a matter critical to the Court's assessment of any motion by the government to withhold information under Rule 16(d), *ex parte* conferences with defense counsel in connection with the government's motions under CIPA 4 are frequently used in cases that purport to concern the national security of the United States. *See United States v. Libby*, 429 F. Supp. 2d 18, 26 (D.D.C.), opinion amended on reconsideration, 429 F. Supp. 2d 46 (D.D.C. 2006) *(*"…the Court will provide the defendant the opportunity to submit an *ex parte* affidavit from counsel detailing the defense…"); Exhibit B, *United States v. Hossain*, No. 19 Cr. 606, ECF No. 138, p. 2 (S.D.N.Y. September 15, 2021) ("the Court held an *ex parte*, in camera CIPA section 2 hearing for the defense"). Such *ex parte* defense hearings balance the interests and fairness of the CIPA proceedings. *See Libby*, 429 F. Supp. 2d at 26.

It is by now well known that the Department of Justice and its partner agencies have access to databases that contain voluminous amounts of information collected under foreign intelligence surveillance authorities, including the "incidental" collection of communications involving U.S. persons. The government may at times query those databases in connection with investigations. The government is required to give notice if it intends to offer into evidence any information that was obtained or derived under FISA or the FISA Amendments Act of 2008.[1] Absent affirmative notice by the government, the defense would have no way of knowing whether or not it could bring a challenge to the manner in which such information was collected or obtained.

### III. ARGUMENT

Based on the nature of the allegations and the Defendant's personal knowledge, there is reason to believe that exculpatory classified evidence exists in the Intelligence Community which has not been made available to the defense. *Ex Parte In Camera* Exhibit A; *See Brooks*, 966 F.2d at 1504; *Sedaghaty*, 728 F.3d at 904. The defense is still waiting for the government to disclose the classified information already in its possession. Further, while the government notified the

---

[1] In relevant part, 50 U.S.C. § 1806 requires that, "[w]henever the [g]overnment intends to enter into evidence or otherwise use or disclose in any trial, hearing, or other proceeding in or before any court . . . against an aggrieved person, any information obtained or derived from an electronic surveillance of that aggrieved person pursuant to [FISA] authority," the government first must "notify the aggrieved person and the court or other authority in which the information is to be disclosed or used that the [g]overnment intends to so."

6

Court and defense on July 17, 2025, of its intention to dismiss the FARA charges, this does not undo the participation of the IC in the investigation or excuse the government's obligation to search the IC for *Brady* material. To the extent the Government seeks to withhold information, that determination that should not be made unilaterally by the prosecution. *See Aref*, 533 F. 3d at 78. Accordingly, we ask the Court to direct the Government to 1) disclose whether *Brady*, *Giglio*, the Federal Rules of Criminal Procedure, or Title 18, United States Code, Section 3500 searches for information in possession of the Intelligence Community have been conducted and 2) search for and disclose the information identified in Exhibit A and all other relevant evidence in the Intelligence Community. *See id.* Counsel respectfully requests an *ex parte* conference with the Court on these matters. *See Libby*, 429 F. Supp. 2d at 26.

Additionally, we respectfully request that the government be directed to disclose whether anyone associated with the prosecution team, including the analysts and Intelligence Community partners who worked with the FBI on this case, relied on the fruits searches of 702 collection.

## IV. CONCLUSION

For the aforementioned reasons, Congressman Cuellar requests the Court grant this discovery motion and order the disclosures and searches requested above.

Respectfully submitted,

FLOOD & FLOOD

Chris Flood
Email: chris@floodandflood.com
State Bar No. 07155700
Federal I.D. No. 9929

Charles Flood
Email: charles@floodandflood.com
State Bar No. 00798178
Federal I.D. No. 22508

*/s/ Stephen D. Dockery*
State Bar No. 24120265
Email: stephen@floodandflood.com
914 Preston, Ste. 800
Houston, Texas 77002
713-223-8877
713-223-8877 fax

*/s/ Eric Reed*
Eric Reed
The Reed Law Firm, PLLC
State Bar No. 00789574
Federal I.D. No. 17904
912 Prairie St., Suite 100
Houston, Texas 77002
713-600-1800
713-600-1840 fax

**ATTORNEYS FOR ENRIQUE ROBERTO "HENRY" CUELLAR**

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 18, 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Stephen Dockery*
Stephen Dockery
