United States District Court
Southern District of Texas
**ENTERED**
August 01, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CRIMINAL ACTION NO. H-24-cr-224 |
| | § | |
| ENRIQUE ROBERTO "HENRY" CUELLAR and IMELDA RIOS CUELLAR, | § § § | |
| | § | |
| Defendant. | § § | |

**MEMORANDUM AND OPINION**

The defendants, Enrique "Henry" Cuellar and Imelda Rios Cuellar, move to dismiss Counts 3 and 7 of the indictment. The indictment charged the Cuellars with conspiracy under 18 U.S.C. § 371 (Counts 1 and 5); bribery under 18 U.S.C. § 201 (Counts 2 and 6); honest services wire fraud under 18 U.S.C. § 1349 (Counts 3 and 7); violations of the Foreign Agent Registration Act under 18 U.S.C. § 219 (Counts 4 and 8); conspiracy to commit money laundering under 18 U.S.C. § 1956(h) (Count 9); and money laundering under 18 U.S.C. § 1956(a)(1)(B)(i) (Counts 10-14). The government has moved to dismiss Counts 4 and 8 of the indictment, (Docket Entry No. 122). Based on a careful review of the indictment, the motion to dismiss, the responses, the reply, and the applicable law, the court denies the motion to dismiss Counts 3 and 7. (Docket Entry No. 86). The reasons are explained below.

**I.      Background**

The indictment alleges that while serving as a member of Congress, Henry Cuellar engaged in an illegal scheme to accept bribes from two foreign entities: (1) an oil and gas company owned and controlled by the Government of Azerbaijan; and (2) a bank headquartered in Mexico City.

(Docket Entry No. 1 at 1-2). The indictment alleges that the bribe payments were laundered, through sham consulting contracts, into shell companies owned by Imelda Cuellar. (*Id.* at 2). The government alleges that Henry Cuellar agreed to perform official acts in his capacity as a member of Congress with the intent to further the interests of the Government of Azerbaijan and of the foreign bank headquartered in Mexico City. (*Id.*). The indictment alleges that Henry Cuellar promised to influence United States foreign policy in favor of Azerbaijan and to influence federal regulation of the financial industry to benefit the bank and its affiliates. (*Id.*).

**II.     The Legal Standard**

"The indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government." FED. R. CRIM. P. 7(c)(1). "The sufficiency of an indictment is judged by whether (1) each count contains the essential elements of the offense charged, (2) the elements are described with particularity, without any uncertainty or ambiguity, and (3) the charge is specific enough to protect the defendant against a subsequent prosecution for the same offense." *United States v. Lavergne*, 805 F.2d 517, 521 (5th Cir. 1986); *see United States v. Green*, 964 F.2d 365, 374 (5th Cir. 1992) (an indictment satisfies Rule 7(c)(1) "if it contains [the] essential elements of [an] offense") (citing *United States v. Mouton*, 657 F.2d 736, 739 (5th Cir. Unit A Sept. 1981). Even though the indictment must contain "the essential facts" of the charged crime, FED. R. CRIM. P. 7(c)(1), the defendant is not entitled to "the evidentiary details by which the government plans to establish his guilt," *United States v. Gordon*, 780 F.2d 1165, 1172 (5th Cir. 1986). The Fifth Circuit has explained that "the language of the statute may guarantee sufficiency if all required elements are included in the statutory language." (*Id.* at 1171).

Under Federal Rule of Criminal Procedure 12(b), a party may challenge an indictment for failing to state an offense. "The propriety of granting a motion to dismiss an indictment . . . by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact . . . . If a question of law is involved, then consideration of the motion is generally proper." *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011) (quoting *United States v. Flores*, 404 F.3d 320, 324 (5th Cir. 2005)). "In reviewing a challenge to an indictment alleging that it fails to state an offense, the court is required to take the allegations of the indictment as true and to determine whether an offense has been stated." *United States v. Moss*, 872 F.3d 304, 308 (5th Cir. 2017) (quoting *United States v. Crow*, 164 F.3d 229, 234 (5th Cir. 1999)).

### III.    Analysis

Counts 3 and 7 of the indictment allege that the defendants participated in a conspiracy to commit honest services wire fraud under 18 U.S.C. § 1346. The indictment alleges that the defendants conspired to:

> [D]efraud and to deprive . . . the United States and the citizens of Texas's 28th Congressional District, of their right to the honest services of HENRY CUELLAR, a Member of the United States House of Representatives, through bribery to influence HENRY CUELLAR's official acts and to induce him to do and to omit to do acts in violation of his official duty, and to knowingly and intentionally transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice.

(Docket Entry No. 1 ¶¶ 99, 117).

"A conviction for honest services wire fraud conspiracy arises from the interaction of three statutes: wire fraud, under 18 U.S.C. § 1343, augmented by the honest services fraud statute, 18 U.S.C. § 1346, and the wire fraud conspiracy statute, 18 U.S.C. § 1349." *United States v. Napout*, 963 F.3d 163, 178 (2d Cir. 2020). The honest services wire fraud statute, 18 U.S.C. § 1346, states

3

that "[f]or the purposes of this chapter, the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services." The elements of honest services fraud are "that the defendant used wire communications in interstate commerce to carry out a 'scheme or artifice to defraud,' 18 U.S.C. § 1343, by depriving another of 'the intangible right of honest services' . . . ." *United States v. Nagin*, 810 F.3d 348, 351 (5th Cir. 2016). A conviction for honest services fraud does not require proof that the official intended to be influenced in his official actions, but only that he was. *Id.* The Supreme Court has described an honest services fraud case as one alleging that "public employees [either] accepted a bribe or kickback in exchange for dishonest conduct that did not necessarily cause their employers to suffer a financial loss, but . . . [instead] deprived the relevant government unit (and thus, by extension, the public) of the right to receive honest services." *Percoco v. United States*, 598 U.S. 319, 326 (2023).

The Cuellars argue that the honest services wire fraud statute is unconstitutionally vague, both on its face and as applied to this case. (Docket Entry No. 86 at 12). They also argue that charging them with bribery and honest services wire fraud together is multiplicitous. (*Id.* at 14). The court considers each argument in turn.

**A. Vagueness**

The Cuellars cite Justice Scalia's concurrence in *Skilling v. United States*, 561 U.S. 358, 417 (2010), and Justice Gorsuch's concurrence in *Percoco v. United States*, 598 U.S. at 333, to argue that the Supreme Court has "repeatedly signaled that" the statue is unconstitutionally vague. (Docket Entry No. 86 at 12-13). The Cuellars assert that the statute "should be set aside as unduly vague until Congress establishes an ascertainable standard of guilt that moves this law into a realm that an ordinary person can understand what is prohibited." (*Id*. at 13). Nonetheless, they

4

acknowledge that the court may "not wish to journey into the thicket of honest services vagueness as a whole" and should instead find that the indictment of Imelda Cuellar for honest services wire fraud has several infirmities. (*Id.*). The court has no desire to wade into the "thicket" of honest services vagueness and need not do so. The Supreme Court has already repeatedly "considered and rejected the broad argument that § 1346 is unconstitutionally vague." *Percoco*, 598 U.S. at 327 (citing *Skilling,* 561 U.S. at 402-05). That binding precedent resolves the Cuellars' facial challenge.

Imelda Cuellar argues that § 1346 is also unconstitutionally vague as applied to her. Citing *Percoco*, Imelda Cuellar argues that she cannot be charged with breaching a fiduciary duty under § 1346 because she had no principal-agent relationship with the United States government. (Docket Entry No. 86 at 13). The government contends that this is not an as-applied vagueness challenge, but rather an argument that the honest services fraud counts against her fail to state an offense. (Docket Entry No. 99 at 25-26). The court agrees. The question is whether, taking the allegations in the indictment as true, it fails to allege an essential element of honest services fraud as to Imelda Cuellar.

In *Percoco*, the Court addressed whether a private citizen can be convicted of honest services fraud conspiracy based on the duty to provide honest services to the public. *Percoco*, 598 U.S. at 319. In that case, a former political aide of the governor of New York was convicted of honest services fraud for accepting bribes and gratuities during a short break in his service as the governor's Executive Deputy Secretary. *Id.* at 322-23. Percoco moved for a judgment of acquittal, arguing that because he was a private citizen when he allegedly accepted the bribes and had only informal influence over the governor's decision making, he could not be convicted of honest services fraud. *Id.* at 324-25. The Supreme Court held that the "intangible right of honest services"

5

does not extend a duty to the public of all private persons working for public officials, because that would effectively criminalize the work of counselors and lobbyists, many of whom "lacked any formal government position but nevertheless exercised very strong influence over government decisions." *Id*. at 330-31. At the same time, the Court rejected the idea that "a person nominally outside public employment can *never* have the necessary fiduciary duty to the public." *Id.* at 329.

The government argues that Imelda Cuellar's argument misconstrues *Percoco* and the theory under which she is charged in Counts 3 and 7. (Docket Entry No. 99 at 26). The government argues that *Percoco* addresses only when a private citizen can be convicted of conspiracy to commit honest-services fraud based on that private citizen's *own* duty to provide honest services to the public. (*Id*.). Here, Imelda Cuellar is not charged with conspiring to defraud the public of its right to her own honest services, but of the public's right to the honest services of Henry Cuellar. (*Id.* at 26-27).

The court agrees. The indictment charges Imelda Cuellar with conspiring to defraud the public of its right to her husband's honest services as a United States Congressman. (*See* Docket Entry No. 1 ¶¶ 99, 117). Imelda Cuellar's liability is grounded in Henry Cuellar's fiduciary duty to provide honest services to his constituents and to the United States, a duty that neither party disputes. *Percoco* limits the scope of a principal's liability under § 1346 but is silent on the scope of a coconspirator's liability. Aside from *Percoco*, the defendants cite no additional authority. Imelda Cuellar has not shown that Counts 3 and 7 are insufficient to state an offense against her for conspiring to commit honest services wire fraud.

### B. Multiplicity

The defendants also argue that Counts 3 and 7 are multiplicitous of the bribery counts, Counts 2 and 6. (Docket Entry No. 86 at 14-15). "An indictment is multiplicitous if it charges a

6

single offense in multiple counts, thus raising the potential for multiple punishment for the same offense, implicating the [F]ifth [A]mendment double jeopardy clause." *United States v. Brechtel*, 997 F.2d 1108, 1112 (5th Cir. 1993) (footnotes omitted). "The chief danger raised by a multiplicitous indictment is the possibility that the defendant will receive more than one sentence for a single offense." *United States v. Swaim*, 757 F.2d 1530, 1537 (5th Cir.), *cert. denied*, 474 U.S. 825 (1985). "The test for determining whether the same act or transaction constitutes two offenses or only one is whether conviction under each statutory provision requires proof of an additional fact which the other does not." *United States v. Nguyen*, 28 F.3d 477, 482 (5th Cir. 1994); *see also United States v. Rice*, 431 F. App'x 289, 294 (5th Cir. 2011).

"[A]n additional danger may arise from a multiplicitous indictment: 'namely an adverse psychological effect on the jury may result from the suggestion that several crimes have been committed.'" *United States v. Martinez*, 599 F. Supp. 2d 784, 794 (W.D. Tex. 2009) (quoting *United States v. Smith,* 591 F.2d 1105, 1108 (5th Cir.1979)). An election of counts may be ordered if the defendant can show prejudice from being charged with multiplicitous counts. *Id.* But "the burden of demonstrating prejudice is a difficult one." *Id.* When a "[d]efendant has made no attempt at demonstrating prejudice from being charged with multiplicitous counts," no prejudice should be inferred. *Id.*

The government argues that the motion to dismiss on the basis of multiplicity before trial is premature. (Docket Entry No. 99 at 28). It argues that the issues raised in the motion may become moot if the jury were to ultimately acquit the defendants on all or some of the allegedly multiplicitous counts. (*Id.* at 29).

The court agrees that the motion to dismiss on the basis of multiplicity is premature. "While the Double Jeopardy Clause may protect a defendant against cumulative punishments for

7

convictions on the same offense, the Clause does not prohibit the State from prosecuting [that defendant] for such multiple offenses in a single prosecution." *Ohio v. Johnson*, 467 U.S. 493, 500 (1984). "[M]ultiplicity itself does not require dismissal of an indictment." *United States v. Alexander*, 2008 WL 4790125, at *2 (W.D. La. Oct. 31, 2008). While the court may elect to order the prosecution to dismiss multiplicitous counts before trial, "courts may also cure potentially multiplicitous counts later." *United States v. Menendez*, 137 F. Supp. 3d 709, 727 (D.N.J. 2015).

Courts in this circuit often defer consideration of these issues until after the trial. *See United States v. Dominguez*, 2018 WL 2057442 (S.D. Tex. May 3, 2018) (denying a motion to dismiss multiplicitous counts as premature); *United States v. Alexander*, 2024 WL 343150, at *2 (E.D. La. Jan. 30, 2024) (denying a motion to dismiss multiplicitous counts or to compel the election of counts in favor of addressing that issue at trial); *United States v. Martinez*, 599 F. Supp. 2d 784, 793–94 (W.D. Tex. 2009) (same); *United States v. Sanders*, 2014 WL 2600353, at *4 (W.D. La. June 9, 2014) (same). The defendants have not argued that any prejudice will result from presenting multiplicitous counts to the jury. The motion to dismiss Counts 3 and 7 as multiplicitous of the bribery counts is denied without prejudice to reurging those arguments at or after the trial.

**IV.   Conclusion**

The motion to dismiss Counts 3 and 7 of the indictment, (Docket Entry No. 86), is denied.

SIGNED on August 1, 2025, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge