United States District Court
Southern District of Texas
**ENTERED**
August 19, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CRIMINAL ACTION NO. H-24-cr-224 |
| | § | |
| ENRIQUE ROBERTO "HENRY" | § | |
| CUELLAR and IMELDA RIOS | § | |
| CUELLAR, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

A grand jury indicted Enrique "Henry" Cuellar and Imelda Rios Cuellar with conspiracy under 18 U.S.C. § 371 (Counts 1 and 5); bribery under 18 U.S.C. § 201 (Counts 2 and 6); honest services wire fraud under 18 U.S.C. § 1349 (Counts 3 and 7); violations of the Foreign Agent Registration Act under 18 U.S.C. § 219 (Counts 4 and 8); conspiracy to commit money laundering under 18 U.S.C. § 1956(h) (Count 9); and money laundering under 18 U.S.C. § 1956(a)(1)(B)(i) (Counts 10–14).

The government moves to dismiss Counts 4 and 8 of the indictment without prejudice and to strike related allegations. (*See generally* Docket Entry No. 122; *see* Docket Entry No. 131 at 8). The Cuellars join in part the government's motion to dismiss Counts 4 and 8. (*See* Docket Entry No. 125 at 6). The Cuellars argue that the court should dismiss Counts 4 and 8 with prejudice, (*see id.*), and they oppose the government's motion to strike related allegations from the indictment, (*see id.* at 6–10). The Cuellars argue that so editing the indictment would violate their Fifth Amendment grand-jury rights because the grand jury may have relied on the to-be-stricken allegations to indict on other counts. (*Id.* at 7). They move to dismiss the entire indictment or, in

the alternative, to strike not just the government's list of allegations but a list of other allegations on the ground that they are related to Counts 4 and 8. (*See id.* at 6–13).

After careful review of the indictment, the government's motion to dismiss and to strike, the Cuellars' motion to dismiss and to strike, the government's response, and the applicable law, the court grants the government's motion to dismiss Counts 4 and 8 without prejudice and to strike certain allegations from the indictment, (Docket Entry No. 122; Docket Entry No. 131 at 8), and denies the Cuellars' motion to dismiss Counts 4 and 8 with prejudice, to dismiss the entire indictment, and to strike additional allegations, (Docket Entry No. 125). The court explains its reasoning below.

I.      **Background**

The indictment alleges that while serving as a member of Congress, Henry Cuellar engaged in an illegal scheme to accept bribes from two foreign entities: (1) an oil and gas company owned and controlled by the Government of Azerbaijan; and (2) a bank headquartered in Mexico City. (Docket Entry No. 1 at 1–2). The indictment alleges that the bribe payments were laundered, through sham consulting contracts, into shell companies owned by Imelda Cuellar. (*Id*. at 2). The indictment alleges that Henry Cuellar agreed to perform official acts in his capacity as a member of Congress with the intent to further the interests of the Government of Azerbaijan and of the foreign bank headquartered in Mexico City. (*Id*.). The indictment also alleges that Henry Cuellar promised to influence U.S. foreign policy in favor of Azerbaijan and to influence federal regulation of the financial industry to benefit the bank and its affiliates. (*Id*.).

Counts 4 and 8 of the indictment allege that this conduct violated the Foreign Agent Registration Act, 18 U.S.C. § 219. (*See* Docket Entry No. 1 ¶¶ 101–02, 119–20). The Act prohibits "public official[s]" from "act[ing] as an agent of a foreign principal" or as "a lobbyist . . . in

connection with the representation of a foreign entity." 18 U.S.C. § 219(a). Its reach is broad, covering many who assist foreign principals in conducting political business in the United States. *See* 22 U.S.C. § 611(c) (defining "agent of a foreign principal"); 2 U.S.C. § 1602(6), (10) (defining "foreign entity" and "lobbyist").

In February 2025, the Attorney General issued a policy memorandum "limit[ing]" the criminal "recourse" the government would pursue under the Act "to instances of alleged conduct similar to more traditional espionage by foreign government actors." Office of Attorney General, Memorandum, General Policy Regarding Charging, Plea Negotiations, and Sentencing, at 4 (Feb. 5, 2025), https://www.justice.gov/ag/media/1388541/dl?inline [hereinafter AG Memo].

The government determined that the indictment's § 219-related counts and allegations went beyond the Attorney General's policy guidance. (Docket Entry No. 122 at 2). The government asks the court to dismiss Counts 4 and 8 and strike the following list of allegations from the indictment:

1. Page 1, Caption: Strike "18 U.S.C. § 219 (Public Official Acting as an Agent of a Foreign Principal)"

2. Page 2, ¶ 1: Strike "and to act as an agent of the Government of Azerbaijan and Foreign Bank-1"

3. Page 4: Strike ¶¶ 10 and 11

4. Page 8, ¶ 25: Strike "and to act as an agent of the Government of Azerbaijan"

5. Page 9, ¶ 29: Strike "and to act as an agent of the Government of Azerbaijan"

6. Page 11, ¶ 40: Strike "and to act as an agent of the Government of Azerbaijan"

7. Page 14, section heading preceding ¶ 45: Strike "and to Engage in Political Activities"

8. Page 14, ¶ 45: Strike "and to be and act as an agent of the Government of Azerbaijan"; strike "and agency activities as defined under FARA"

9. Page 25, ¶ 70: Strike "and to act as an agent of Foreign Bank-1"

10. Page 26, ¶ 74: Strike "to act as an agent of Foreign Bank-1"

11. Page 32, section heading preceding ¶ 83: Strike "and to Engage in Political Activities"

12. Pages 32–33, ¶ 83: Strike "and to be and act as an agent of Foreign Bank-1"; strike "and agency activities as defined under FARA"

13. Page 39: Strike ¶ 87(b)

14. Page 39, ¶ 88: Strike "and through HENRY CUELLAR acting as an agent of a foreign principal required to register under FARA"

15. Page 40, ¶ 93: Strike "and to be and act as an agent of the Government of Azerbaijan, a foreign principal as defined by FARA"

16. Page 45: Strike ¶ 104(b)

17. Page 45, ¶ 105: Strike "and through HENRY CUELLAR acting as an agent of a foreign principal required to register under FARA"

18. Page 46, ¶ 111: Strike "and to be and act as an agent of Foreign Bank-1, a foreign principal as defined by FARA"

19. Page 50, ¶ 122: Strike "and having a public official be or act as an agent of a foreign principal required to register under FARA in violation of Title 18, United States Code, Section 219"

20. Page 51, ¶ 125: Strike "and having a public official be or act as an agent of a foreign principal required to register under FARA in violation of Title 18, United States Code, Section 219"

(*Id.* at 2–3). The Cuellars respond the government cannot strike paragraphs or allegations without dismissing the entire indictment or, in the alternative, without striking the following list of allegations, parts of which overlap with the government's list:

21. Page 1, Caption: Strike "18 U.S.C. § 219 (Public Official Acting as an Agent of a Foreign Principal)"

22. Page 2, ¶ 1: Strike "to commit acts in violation of his official duties, and to act as an agent of the Government of Azerbaijan and Foreign Bank-1"

4

23. Page 4: Strike ¶¶ 10 and 11 and header

24. Page 8 ¶ 25: Strike "The payments contemplated in the contract were in exchange for HENRY CUELLAR's agreement to perform official acts and acts in violation of his official duties and to act as an agent of the Government of Azerbaijan"

25. Page 9, ¶ 29: Strike "Like the prior contract, this agreement was a sham used to disguise and legitimate HENRY CUELLAR's corrupt agreement to take official acts and acts in violation of his official duties for the benefit of Azerbaijan and to act as an agent of the Government of Azerbaijan in exchange for bribes"

26. Page 11, ¶ 40: Strike "Like the prior contracts, this contract was a sham used to disguise and legitimate HENRY CUELLAR's corrupt agreement to take official acts and acts in violation of his official duties to benefit the Government of Azerbaijan and to act as an agent of the Government of Azerbaijan in exchange for bribe payments"

27. Page 14: Strike ¶ 45, all its subparts (a) through (m), and header

28. Page 25, ¶ 70: Strike "This contract, like the sham contracts involving Foreign Oil Company-1, was used to disguise and legitimate unlawful payments from Foreign Bank-1 to HENRY CUELLAR in exchange for HENRY CUELLAR's agreement to perform official acts and acts in violation of his official duties and to act as an agent of Foreign Bank-1"

29. Page 26, ¶ 74: Strike "These payments were made pursuant to HENRY CUELLAR's corrupt agreement to act as an agent of Foreign Bank-1 and to take official acts and acts in violation of his official duties beneficial to Foreign Bank-1 in exchange for bribes"

30. Page 32: Strike ¶ 83, all its subparts (a) through (f), and header

31. Page 39: Strike ¶ 87(b)

32. Page 39: Strike ¶ 88

33. Page 40: Strike ¶ 93

34. Page 45: Strike ¶ 104

35. Page 45: Strike ¶ 105

36. Page 46: Strike ¶ 111

37. Page 50, ¶ 122: Strike "and having a public official be or act as an agent of a foreign principal required to register under FARA in violation of Title 18, United States Code, Section 219"

38. Page 51, ¶ 125: Strike "and having a public official be or act as an agent of a foreign principal required to register under FARA in violation of Title 18, United States Code, Section 219"

39. Strike all references to wholly deleted paragraphs

(Docket Entry No. 125 at 11–13).

The competing motions to dismiss or strike are considered below.

## II. Discussion

The parties' motions present three legal issues for the court to resolve: (1) whether the court should dismiss Counts 4 and 8 with prejudice or without prejudice; (2) whether the government can strike its proposed list of allegations and do so without violating the Cuellars' Fifth Amendment grand-jury rights; and (3) whether the Cuellars can strike its list of allegations. The court addresses each issue in turn.

### A. Dismissal of Counts 4 and 8, With or Without Prejudice

The government moves to dismiss Counts 4 and 8 of the indictment, without prejudice. (Docket Entry No. 122 at 1–2). Federal Rule of Criminal Procedure 48(a) permits the government, "with leave of court," to "dismiss an indictment, information, or complaint." Although Rule 48(a) requires the government to obtain court approval to dismiss counts from an indictment, the court's oversight of the government's decision not to prosecute certain counts in an indictment is limited. The Constitution makes the government "the absolute judge of whether a prosecution should be initiated and the first and presumptively the best judge of whether a pending prosecution should be terminated." *United States v. Cowan*, 524 F.2d 504, 513 (5th Cir. 1975). If "the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision

whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). To justify dismissal, the prosecution must "supply sufficient reasons—reasons that constitute more than 'a mere conclusory interest'"—for believing that "dismissal is in the public interest." *United States v. Salinas*, 693 F.2d 348, 352 (5th Cir. 1982) (quoting *United States v. Hamm*, 659 F.2d 624, 631 n.23 (5th Cir. Unit A 1981) (en banc)). That requirement applies even when, as here, "the defendant consents" in part "to the motion to dismiss." *Hamm*, 659 F.2d at 629 (explaining that "in extremely limited circumstances in extraordinary cases," a court "may deny the motion when the prosecutor's actions clearly indicate a 'betrayal of the public interest'" (quoting *Cowan*, 524 F.2d at 514)).

The government has stated its reasons for dismissing Counts 4 and 8, and they meet the requirement for court approval. The Attorney General's memorandum outlines the government's current enforcement priorities and explains that limiting criminal prosecutions under the Act will "free resources to address" other priorities. AG Memo at 4. The Attorney General concluded that criminal prosecutions under the Act should be "limited to instances of alleged conduct similar to more traditional espionage by foreign government actors" and stated that the government may pursue other violations of the Act through "civil enforcement, regulatory initiatives, and public guidance." *Id.* The government moved to dismiss Counts 4 and 8 to align this prosecution with the Attorney General's current enforcement priorities. (Docket Entry No. 122 at 2). Because the record does not show that the government is moving to dismiss Counts 4 and 8 for reasons "clearly contrary to the public interest," the court "must" grant its motion. *Hamm*, 659 F.2d at 631.

The Cuellars join the government's motion to dismiss Counts 4 and 8, but they contend that the court should dismiss those counts "with prejudice." (Docket Entry No. 125 at 6). The

7

Cuellars ask that the court dismiss Counts 4 and 8 in a manner that precludes the government from bringing those counts' claims again in a future criminal case.

"Typically," though, "a dismissal under Rule 48(a) 'is without prejudice to the government's right to reindict for the same offense, unless" the government "expressly" says otherwise. *United States v. Adams*, 777 F. Supp. 3d 185, 214 (S.D.N.Y. 2025) (quoting *United States v. Ortega-Alvarez*, 506 F.2d 455, 458 (2d Cir. 1974)); *accord United States v. Welborn*, 849 F.2d 980, 983 (5th Cir. 1988) (explaining that when "the motion is uncontested, the court should ordinarily presume that the prosecutor is acting in good faith and dismiss the indictment without prejudice"). Rule 48(a) enables courts to convert dismissals without prejudice into dismissals with prejudice. *See, e.g.*, *Adams*, 777 F. Supp. 3d at 236–38. But courts usually do so when a dismissal with prejudice is necessary to protect the defendant's rights. *Salinas*, 693 F.2d at 351; *see Adams*, 777 F. Supp. 3d at 217 (explaining a "court's discretion to condition its granting of a Rule 48(a) motion on dismissal being with prejudice is a critical means of" protecting defendants "from prosecutorial harassment").

The Cuellars have not shown that unless the dismissal of Counts 4 and 8 is with prejudice, they will face prosecutorial harassment. The record shows that the government moved to dismiss Counts 4 and 8 after the Attorney General decided that prosecuting such offenses would criminalize an overly broad range of lobbying activities and absorb valuable prosecutorial resources. The Cuellars do not argue that the government's reasons for dismissing Counts 4 and 8 are pretextual. Nor do they offer evidence that the government is acting in bad faith or with the intent to harass them at a future time. Counts 4 and 8 are dismissed, without prejudice.

### B. The Government's Motion to Strike Certain Allegations and the Cuellars' Motion to Dismiss the Indictment or to Strike Certain Additional Allegations

The government moves to strike allegations about Counts 4 and 8 from the indictment. (Docket Entry No. 122 at 2–3); *see supra* at 3–4 (listing the government's strike requests). The Cuellars present several reasons that the court should not grant the government's motion. First, they argue that the Federal Rules of Criminal Procedure do not permit the government to amend allegations in an indictment after a grand jury returns it. (Docket Entry No. 125 at 6). Second, they argue that the government seeks to remove relevant allegations, not merely surplusage, as permitted by Rule 7(d). (*Id.* at 6–7 (suggesting the government "is neither deleting surplusage nor fixing typos")). Third, they argue that the government cannot strike its list of allegations without dismissing the entire indictment. (*Id.* at 7–10). The Cuellars' arguments are unpersuasive.

First, the government can move to strike allegations from an indictment. To be sure, Rule 7(d) speaks to only the "defendant's" ability to move to "strike surplusage from the indictment or information." But the Supreme Court, Fifth Circuit, and other courts of appeals have concluded the government may move to strike allegations from an indictment. *See United States v. Miller*, 471 U.S. 130, 144 (1985) (explaining the government may "drop from an indictment those allegations that are unnecessary to an offense that is clearly contained within it"); *United States v. Gonzalez-Figueroa*, 590 F. App'x 404, 408–10 (5th Cir. 2014) (per curiam) (rejecting the defendants' argument that the government constructively amended the indictment when the district court "granted the Government's pretrial motion to strike as surplusage" certain allegations); *Thomas v. United States*, 398 F.2d 531, 533, 540 (5th Cir. 1967) (holding that the government acceptably struck paragraphs and several overt-acts allegations from the indictment); *see also United States v. Augustin*, 661 F.3d 1105, 1116 (11th Cir. 2011) (per curiam) ("This Court and the

9

Supreme Court have both recognized that the government may move to strike surplusage from an indictment."). The government's motion is proper.

Second, even if some of the allegations the government seeks to strike are not surplusage (although almost all the government's strike requests appear to remove surplusage, such as legally conclusory statements), the government may seek to remove more than just surplusage from the indictment. Rule 48(a) enables the government to dismiss substantive counts from an indictment. It follows that the government may dismiss not only substantive counts but also the allegations underlying those counts.

*Thomas* offers an example. There, the government charged three defendants with conspiracy to violate bank-robbery statutes and the aider-and-abettor statute. 398 F.2d at 532. The government later moved to strike Paragraph 2 and Overt Acts 6, 7, and 8 from the indictment's conspiracy count. *See id.* at 533. The district court granted the motion and, as a result, the government deleted from the indictment "one of the alleged objects of the conspiracy" and "the three overt acts coming closest to charging the appellant with actual participation in the substantive offense." *Id.* at 537. The Fifth Circuit affirmed the appellant's conviction, finding no problem with the government's striking allegations from the indictment. The panel reasoned that because the government could have decided at trial not to introduce evidence proving Paragraph 2 or Overt Acts 6, 7, and 8, the government could strike those allegations from the indictment without prejudicing the defendant. *See id.* at 539. *Thomas* illustrates that the government may strike even substantive allegations from an indictment.

The key limitation on the government's ability to strike certain allegations from an indictment is the doctrine of constructive amendment. That doctrine tests whether the government improperly bypassed the Fifth Amendment's grand-jury requirement by adding or broadening

10

claims after an indictment has been returned. *See United States v. Soudan*, 812 F.2d 920, 929 (5th Cir. 1986) ("It is a long established principle that after an indictment has been returned its charges may not be broadened except by the grand jury itself."). The Cuellars do not, and could not, argue that the government's motion to strike broadens the indictment against them. Instead, the government seeks to narrow the allegations against the Cuellars that it may prove at trial. The motion to strike is proper. *See United States v. Glassman*, 562 F.2d 954, 957 (5th Cir. 1977) (upholding the district court's removal of "the words 'bring or'" from an indictment because "[t]he deletion eliminated one of the alternatives specified in the statute and added nothing to the indictment"); *Overstreet v. United States*, 321 F.2d 459, 461 (5th Cir. 1963) ("[W]ithdrawing a part of a charge from the consideration of the jury does not work an amendment of the indictment, provided nothing is thereby added to the indictment." (internal citation omitted)).

Third, the government's strike requests do not undermine the Cuellars' grand-jury rights. The Cuellars argue that a court "may not amend an indictment by striking out words which 'may have formed the basis for one or more of the grand jurors to vote to indict'" because "the grand jury may have returned their indictment based on a fact or premise presented in the deleted material." (*See* Docket Entry No. 125 at 5 (quoting *United States v. Beeler*, 587 F.2d 340, 343 (6th Cir. 1978))). But that rule statement from *Beeler*, which derives from *Ex parte Bain*, 121 U.S. 1 (1887), is no longer good law.

In *Miller*, the Supreme Court rejected the same argument the Cuellars make here. A grand jury indicted Miller with three counts of mail fraud, and the government later moved to dismiss the third count. *See* 471 U.S. at 131. Miller appealed his conviction on the remaining counts, arguing that the government's dismissal of the third count created a "fatal variance between the 'scheme and artifice' to defraud charged in the indictment and that which the Government proved

11

at trial." *Id.* The Supreme Court rejected Miller's argument and, as relevant here, his reliance on *Bain*. *See id.* at 140–45. The Court recognized that *Bain* "can support the proposition that the striking out of parts of an indictment invalidates the whole of the indictment" but declined to apply that reading of *Bain* to the facts in *Miller*. *Id.* at 142. The Court instead explained that it has and would continue to sustain "convictions where courts had withdrawn or ignored independent and unnecessary allegations in the indictments." *Id.* at 144.

The Fifth Amendment poses no barrier to "drop[ping] from an indictment those allegations that are unnecessary to an offense that is clearly contained within it." *Id.* The government may plead indictments "conjunctively" but prove them "disjunctively," *United States v. Hoeffner*, 626 F.3d 857, 863 (5th Cir. 2010) (per curiam) (quoting *United States v. Haymes*, 610 F.2d 309, 310 (5th Cir. 1980) (per curiam)), because it is presumed that grand juries find "probable cause for all of the alternative theories" the government presents in a "conjunctive[ly]" pleaded indictment, *United States v. LaPointe*, 690 F.3d 434, 440 (6th Cir. 2012). A defendant convicted on a narrower range of charges or allegations than those set out in the indictment is not deprived of his "substantial right to be tried only on charges presented in an indictment returned by a grand jury." *Miller*, 471 U.S. at 140 (quoting *Stirone v. United States*, 361 U.S. 212, 217 (1960)). *Miller* confirms that the government may strike its list of allegations without offending the Cuellars' Fifth Amendment grand-jury rights.

### C.   The Cuellars' Motion to Strike Additional Allegations

Lastly, the Cuellars move to strike additional allegations from the indictment. (Docket Entry No. 125 at 10). The basis for the Cuellars' request is murky. At first, the Cuellars appear to move to strike as surplusage the additional allegations in their list, *see* FED. R. CRIM. P. 7(d). (Docket Entry No. 125 at 10 ("[T]he Defendants ask the Court to strike all FARA material, not

12

just the selections offered by the Government.")). But the Cuellars cite authority for the incorrect proposition that the government cannot narrow an indictment without violating the Fifth Amendment. (*See id.* at 11 (citing *Russell v. United States*, 369 U.S. 749, 770 (1962))). The government interprets the Cuellars as arguing the latter position. (Docket Entry No. 131 at 7–8). Neither basis for the Cuellars' request provides a reason to grant it.

First, the Cuellars do not explain how the additional strikes they propose eliminate surplusage, such as needlessly wordy paragraphs or irrelevant or immaterial allegations. *See, e.g.*, *United States v. Hedgepeth*, 434 F.3d 609, 612 (3d Cir. 2006); *United States v. McDermot*, No. 93-3603, 1995 WL 371036, at *5 (5th Cir. June 5, 1995); *United States v. Bullock*, 451 F.2d 884, 888 (5th Cir. 1971). A review of the Cuellars' strike requests demonstrates that they ask the court to eliminate from the indictment pertinent allegations. Take Strike Request No. 36, *see supra* at 5, through which the Cuellars hope to "strike all of Paragraph 111," (Docket Entry No. 125 at 12). Paragraph 111 of the indictment alleges that:

> In exchange for the payments, HENRY CUELLAR agreed to perform official acts and acts in violation of his official duties benefitting Foreign Bank-1 and to be and act as an agent of Foreign Bank-1, a foreign principal as defined by FARA, with respect to the matters detailed in Paragraph 83 of this Indictment, among others, as opportunities arose.

(Docket Entry No. 1 ¶ 111). The government proposed to strike the phrase, "and to be and act as an agent of Foreign Bank-1, a foreign principal as defined by FARA," (Docket Entry No. 122 at 3), removing a conclusory statement related to the counts it is dismissing from the indictment. The remainder of Paragraph 111 charges that Henry Cuellar accepted money in exchange for performing official acts and acts in violation of his official duties—in short, that he took bribes. *See* FED. R. CRIM. P. 7(c)(1). The Cuellars do not offer a reason to characterize those allegations as surplusage. The same goes for the balance of the Cuellars' strike requests that add to the

government's list of proposed strikes. The court sees no basis in Rule 7(d) for granting the Cuellars' motion to strike additional allegations.

Second, the Fifth Amendment does not warrant striking from the indictment the Cuellars' proposed list of additional allegations. The government may narrow an indictment's allegations and charges without offending the Fifth Amendment's right to a grand jury. *Miller*, 471 U.S. at 144; *Thomas*, 398 F.2d at 539–40. Generally, the decision whether to narrow an indictment rests in the Executive Branch's sound discretion. *Cowan*, 524 F.2d at 513. The Cuellars do not claim that improper motives animated the government's motion to dismiss Counts 4 and 8 and to strike allegations from the indictment. Nor does striking the allegations in the government's list prejudice the Cuellars; they know in advance what allegations and charges the government will (and will not) pursue at trial. No legal authority supports the Cuellars' motion to strike additional allegations.

### III.     Conclusion

The court grants the government's motion to dismiss Counts 4 and 8 of the indictment without prejudice and to strike allegations from it. (Docket Entry No. 122).

The court denies the Cuellars' motion to dismiss Counts 4 and 8 with prejudice, to dismiss the entire indictment, and to strike additional allegations. (Docket Entry No. 125).

SIGNED on August 19, 2025, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge